UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GREGORY B.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-01906-DLP-JMS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

<u>O<small>RDER</small></u>

Plaintiff Gregory B. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

I.  P<small>ROCEDURAL</small> H<small>ISTORY</small>

On June 1, 2015, Gregory filed an application for Title XVI SSI. (Dkt. 17-5 at 1-10, R. 454-63). Gregory's application alleged disability resulting from knees, lower back pain, high blood pressure, acid reflux, difficulty sleeping, severe headaches, hearing loss, and constant bleeding. (Dkt. 17-6 at 26, R. 518). The Social Security

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

Administration ("SSA") denied Gregory's claim initially on March 30, 2016, (Dkt 17-3 at 47, R. 200), and on reconsideration on October 12, 2016. (Id. at 87, R. 240). On December 22, 2016, Gregory filed a written request for a hearing, which was granted. (Dkt. 17-4 at 26, R. 264). The hearing set for October 23, 2018 was postponed so that Plaintiff could obtain representation. (Dkt. 17-2 at 102-113, R. 101-112). On June 6, 2019, Administrative Law Judge ("ALJ") Jeanette Schrand conducted a hearing, where Gregory appeared in person and vocational expert, Devin Lessne, appeared telephonically. (Dkt. 17-2 at 46, R. 45). On August 14, 2019, ALJ Schrand issued an unfavorable decision finding that Gregory was not disabled. (Dkt. 17-2 at 19-33, R. 18-32). Gregory appealed the ALJ's decision, and, on June 5, 2020, the Appeals Council denied Gregory's request for review, making the ALJ's decision final. (Dkt. 17-2 at 2-4, R. 1-3). Gregory now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.  STANDARD OF REVIEW

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national

economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a)². The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then he must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520 (A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line

---

² Because the statutory references for SSI and DIB claims are substantially similar, the Undersigned will reference them interchangeably throughout this opinion.

of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(iv).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of his age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Gregory is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of

credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to her conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

Gregory was fifty-five years old as of his alleged onset date of June 1, 2015. (Dkt. 17-2 at 56, R. 55). He obtained a GED. (Id. at 56-57, R. 55-56). He has past relevant work as a cleaner, laborer, sales representative, and chauffeur. (Id. at 91-92, R. 90-91).

#### B. ALJ Decision

In determining whether Gregory qualified for benefits under the Act, the ALJ

5

employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Gregory was not disabled. (Dkt. 17-2 at 19-33, R. 18-32). At Step One, the ALJ found that Gregory had not engaged in substantial gainful activity since his alleged onset date of June 1, 2015. (Id. at 21, R. 20).

At Step Two, the ALJ found that Gregory has severe impairments of degenerative disc disease of the lumbar spine, obesity, vision loss, depression, and anxiety, as well as nonsevere impairments of hyperlipidemia, diabetes mellitus, history of gunshot wounds to the head and legs, stage three chronic kidney disease, benign colon adenomas, history of alcohol abuse, and sleep apnea. (Dkt. 17-2 at 22, R. 21). Additionally, the ALJ concluded that Gregory's headaches and hearing loss were not medically determinable impairments. (Id.).

At Step Three, the ALJ found that Gregory's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926, considering Listings 1.04 for his spine, 2.02 for his vision loss, 12.04 and 12.06 for his depression and anxiety, and Social Security Ruling 19-2p for his obesity. (Dkt. 17-2 at 23, R. 22). As to the "paragraph B" criteria, Gregory had moderate limitations in all four categories: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Id. at 23-24, R. 22-23).

After Step Three but before Step Four, the ALJ found that Gregory had the residual functional capacity ("RFC") to perform "medium work," as defined in 20

6

C.F.R. § 416.967(c), with the following limitations: lift and carry fifty pounds occasionally and twenty pounds frequently; sit for six hours and stand or walk for six hours in a standard workday; cannot climb ladders, ropes, or scaffolds; no more than occasional exposure to wet, slippery or uneven walking surfaces and hazards such as moving mechanical parts or unprotected heights; no driving motor vehicles; no working with small parts or materials such as objects smaller than two inches in diameter or smaller; can understand, remember, and carry out no more than simple and routine tasks; no more than routine judgment defined as being able to make simple work-related decisions and no more than simple workplace changes; no more than occasional, brief, and superficial interaction with the public; no more than occasional interaction with coworkers and no tandem tasks or teamwork where one production step is dependent on a prior step; and after a thirty day probationary or learning period, no more than occasional interaction with supervisors. (Dkt. 17-2 at 25, R. 24).

At Step Four, the ALJ concluded that Gregory is not able to perform any of his past relevant work. (Dkt. 17-2 at 31, R. 30).  At Step Five, relying on the vocational expert's testimony, the ALJ determined that, considering Gregory's age, education, work experience, and residual functional capacity, he was capable of adjusting to other work. (Id. at 31-32, R. 30-31). The ALJ thus concluded that Gregory was not disabled. (Id. at 32, R. 31).

### IV. ANALYSIS

The Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ (1) failed to resolve an internal conflict in the vocational expert's testimony; (2) failed to give appropriate weight to the agency's examining psychological expert; and (3) failed to find that Plaintiff had any knee related limitations. (Dkt. 19 at 1). The Commissioner maintains that the ALJ's decision was supported by substantial evidence because no internal conflict existed in the vocational expert's testimony; the ALJ provided sufficient justification to discount the state agency psychological expert; and the ALJ's decision not to include limitations for knee impairments was justified. (Dkt. 23 at 6-11).

*i. Vocational Expert Testimony*

First, Plaintiff argues that the ALJ failed to fulfill her Step Five burden because she did not resolve a conflict present in the vocational expert's testimony. (Dkt. 19 at 8). In her RFC analysis, the ALJ indicated that Gregory could have only occasional exposure to moving mechanical parts. (Dkt. 17-2 at 25, R. 24). Considering his RFC and relying on the vocational expert's testimony, the ALJ then concluded that Gregory could not perform any of his past relevant work as a cleaner, laborer, chauffeur, or sales representative. (Id. at 31, R. 30). During the Step Five evaluation, relying on the vocational expert's testimony, the ALJ only cited to one position in the national economy that Gregory could still perform, that of a conveyor feeder, off bearer. (Dkt. 19 at 9 (citing Dkt 17-2 at 32, R. 31)). Plaintiff argues that this reliance was faulty insofar as the ALJ did not address the vocational expert's testimony that an

8

RFC limitation of occasional exposure to moving mechanical parts may conflict with a job requiring use of a conveyor belt, such as the conveyor feeder, off bearer position. (Dkt. 19 at 9).

The Commissioner argues in response that no conflict existed between the vocational expert's testimony and the Dictionary of Occupational Titles (the "DOT"). (Dkt. 23 at 9). Moreover, the Commissioner argues, even if a conflict existed, Plaintiff's counsel did not raise any challenge during the hearing and the ALJ was thus only required to resolve apparent conflicts between the vocational expert's testimony and the DOT. (Id. at 10-11). Because no apparent conflict existed, the ALJ was not required to address anything. (Id.).

At Step Five, the Commissioner has the burden of proof of establishing "that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) (quoting 20 C.F.R. § 404.1560(c)(2)). Social Security Ruling 00-4p requires ALJs "to ask whether a vocational expert's evidence 'conflicts with information provided in the DOT' before relying on that evidence to support a determination of nondisability." *Id.* (citing SSR 00-4p). When the vocational expert informs the ALJ "that a conflict exists, or if a conflict is apparent, an ALJ may rely on the vocational expert's testimony as substantial evidence to support a determination of nondisability only if she resolves the conflict in favor of the vocational expert's testimony and explains why." *Moore v. Saul*, No. 4:19-CV-106-DRL-JEM, 2020 WL 8674019, at *4 (N.D. Ind. Dec. 16, 2020), *report and recommendation adopted*, No. 4:19-CV-106 DRL-JEM, 2021 WL 776746

(N.D. Ind. Feb. 26, 2021) (citing SSR 00-4p, 2000 WL 1898704, at *4; *Overman*, 546 F.3d at 463). SSR 00-4p states that ALJs "must explain the resolution of the conflict irrespective of how the conflict was identified." SSR 00-4p, 2000 WL 1898704 at *4.

The Court first notes that the vocational expert testified that a conflict existed between her testimony and the DOT.

> ALJ: All right. And has your testimony with respect to the hypotheticals that I offered to you conflict[ed] in any way with the DOT or the companion publication, the SCO, and if so, can you explain how and what your testimony is based on?
>
> VE: Your Honor, the only possibility would be just on the face of it, the off bearer, the conveyor, feeder off bearer. The Selected Characteristics of Occupation has no hazard present but it is a conveyor belt or conveyor.

(Dkt. 17-2 at 96, R. 95). The vocational expert brought to the ALJ's attention the fact that Gregory was limited to jobs that require only occasional exposure to hazards such as moving mechanical parts and that the job of conveyor feeder, off bearer involved use of a conveyor belt.[3] (Id.).

The Commissioner argues that the vocational expert then explicitly stated that the conveyor feeder position would not rise to the level of moving mechanical parts and, therefore, would pose no conflict to Gregory's case. (Dkt. 23 at 10). On the Court's review, it is unclear what the vocational expert was trying to convey about the relationship between the conveyor feeder position and the DOT.

> ALJ: All right. So, in your experience or in your opinion, does that mean that job is eliminated or is it in your opinion that would mean they are off bearing and they are not in close enough location to the conveyor that there is any hazard risk involved?

---

[3] At least one court in this Circuit has found a conflict between a claimant's limitations on exposure to hazards and jobs requiring use of a conveyor belt. *John C. v. Saul*, No. 4:19-cv-04111-SLD-JEH, 2021 WL 794780, at *4 (C.D. Ill. Mar. 2, 2021).

10

> VE: Your Honor. As far as the SCO goes, I don't see it rising to the proximity to moving mechanical parts level. Then, the SCO probably up to – you know, to the point where you are working in a saw mill or working with, you know, like a circular saw. Even like the deli cutter slicer, it is not present. So, it depends upon, you know, the level of where that limitation would be hazard wise. If they can't work around a moving conveyor because, you know, they don't see it being something that would be – a hazard that would arise to the level. You know, that would be a danger unless if they fell into a conveyor.
>
> ALJ: Okay.
>
> VE: That could be problematic.

(Dkt. 17-2 at 96, R. 95). The vocational expert appears to testify that use of a conveyor belt does not necessarily rise to the level of having moving mechanical parts or constituting a hazard, but that the placement of a conveyor belt in a particular position can constitute a hazard depending on the claimant's reason for requiring limitations for hazards of moving mechanical parts. (Id.). For example, the vocational expert notes that the position of the conveyor feeder may be problematic for a claimant who does not see the conveyor belt or who falls into the conveyor belt. (Id). Despite the vocational expert pointing out this apparent conflict, there is no explanation from the ALJ in this case as to why Gregory was deemed able to perform a position that required use of a conveyor belt, an explanation that is needed in light of the ALJ's acknowledgment of Gregory's vision difficulties and his need to be limited to occasional exposure to moving mechanical parts. The Court cannot state with any great confidence that the job of conveyor feeder, off bearer does or does not require occasional exposure to hazards such as moving mechanical parts. Without any discussion from the ALJ, the Court is left to guess the ALJ's reasoning. This

11

error is especially troubling because the ALJ only relied on this one position to meet her Step Five burden.

The Commissioner finally argues that, despite the vocational expert's testimony, no conflict existed between the vocational expert's testimony and the DOT. (Dkt. 23 at 11). Specifically, the Commissioner attempts to justify the ALJ's decision by citing to the definition of a "moving mechanical part" to conclude that a conveyer belt should not be considered a moving mechanical part, and also to the DOT description for the job of conveyer feeder, off bearer, which states that moving mechanical parts are not present. (Id.). This justification, however, was not relied upon by the ALJ and the Court cannot consider it now. The Court's review is limited to the reasons articulated in the ALJ's decision, and post-hoc rationalizations submitted by the Commissioner are impermissible. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's position with post -hoc rationale are impermissible); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."); *Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23, 2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization). Here, the ALJ was silent on her reasoning as to why Gregory could perform the job of conveyor feeder, off bearer despite its requirement of working near a conveyor belt. (Dkt. 17-2 at 32, R. 31). As it stands, the

12

ALJ concluded that Gregory could perform the job of conveyor feeder, off bearer, but provided no logical bridge between the evidence, the vocational expert's testimony, and her conclusion and, thus, failed to meet the requirements of SSR 00-4p. Remand is therefore required.

### ii. Agency Psychological Expert

Plaintiff next argues that the ALJ failed to give appropriate weight to the state agency's only examining psychological expert. (Dkt. 19 at 11). Plaintiff contends that Dr. Kittrell's opinion established limitations greater than the ALJ imposed in the RFC, limitations that would render Plaintiff disabled under Agency regulations. (Id. at 11-13). Specifically, Gregory maintains that the ALJ provided no reasonable or logical reasons for giving Dr. Kittrell's opinion only "some weight," as opposed to the non-examining state agency physicians who were given "significant weight." (Id. at 11-12). Moreover, Plaintiff argues that the reasons provided by the ALJ for discounting Dr. Kittrell's opinion were not supported by substantial evidence. (Id. at 13-17). These errors are not harmless, Plaintiff maintains, because Dr. Kittrell's findings would render Gregory disabled. (Id.). The Commissioner argues that the ALJ appropriately discounted the opinion of Dr. Kittrell and provided sufficient reasons for doing so. (Dkt. 23 at 6-8).

In this case, on August 25, 2015, Gregory was examined by Dr. Gary Kittrell for a psychological consultative examination. (Dkt. 17-7 at 219, R. 838). Dr. Kittrell described Gregory as a male of large stature, who presented as a moderately anxious, restless, agitated, and depressed individual who put forth an adequate effort on most

13

assigned tasks. (Id. at 220, R. 839). Gregory's concentration and attention to presented tasks was below average, his cognitive pace was average, his frustration tolerance was below average, his thought content was appropriate, his social behavior was adequate, and his general fund of information was low average. (Id. at 221-22, R. 840-41). Dr. Kittrell concluded that Gregory's "presentation, mental status, and records review appeared consistent with probable low average intellectual status, executive skills deficits, anxiety and depression dynamics, some PTSD dynamics, socially maladjusted dynamics, and reported restrictive daily activities. (Id. at 222, R. 841). Dr. Kittrell indicated that Gregory should be able to understand simple instructions, would have difficulty following through with work tasks and would experience marked problems with general productivity standards due to emotional lability, below average frustration tolerance, and agitation. (Id. at 223, R. 842). As to his social skills, Dr. Kittrell stated that Gregory would have difficulty dealing effectively with the public, coworkers, and supervisors. (Id.).

In her opinion, the ALJ gave significant weight to the state agency reviewing psychological consultants and only some weight to the state agency examining psychological consultant, Dr. Kittrell. (Dkt. 17-2 at 30, R. 29). The ALJ noted that she was giving Dr. Kittrell less weight, despite the fact that he personally examined Gregory, because (1) Gregory was self-employed in the past fifteen years and his mental impairments have not dramatically worsened since that time and (2) because Gregory's medical records mention malingering during previous consultative exams,

14

so it is likely that Gregory may have presented as more limited during Dr. Kittrell's evaluation than normal. (Id.).

Although "an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence," the opinion of an examining source generally receives "more weight" than the opinion of a non-examining source. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (quoting 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1): "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Rejecting the opinion of an agency's doctor that supports a disability finding is "unusual" and "can be expected to cause a reviewing court to take notice and await a good explanation." *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (citing *Beardsley*, 758 F.3d at 834). When an ALJ rejects an agency doctor's finding, a good explanation is deserved because the agency's own doctor is "unlikely . . . to exaggerate an applicant's disability." *Zima v. Comm'r of Soc. Sec.*, No. 3:20-CV-486 JD, 2021 WL 4237357, at *3 (N.D. Ind. Sept. 16, 2021) (quoting *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013)).

Here, the ALJ gave some weight to Dr. Kittrell's opinion, adopting his recommendations as to interactions with the public, coworkers, and supervisors, but not adopting Dr. Kittrell's finding that Gregory would have marked difficulty following through with work tasks and meeting general productivity standards. The ALJ stated that the latter recommendation related to productivity and following through was not consistent with the record due to Gregory's history of self-

15

employment and the fact that his medical records had mentioned malingering in the past. (Dkt. 17-2 at 30, R. 29). Plaintiff argues that neither reason is sufficient, nor accurate, and cannot be used to support a discounting of the agency's own examining psychological expert, especially in light of the vocational expert's testimony that an individual absent more than one day per month or off task more than 10 percent of the workday would be precluded from any employment. (Dkt. 19 at 11-13).

First, the Court notes that Gregory was self employed from 2007 to 2012, over three years before the present application date of June 1, 2015. (Dkt. 17-2 at 29, R. 28). The ALJ herself acknowledges this fact in her opinion, but still uses this as support for opinion of Gregory's work capabilities as of August 2019. (Id.). The Court struggles to understand how an individual's ability to sustain full-time work three years before his SSI application date is in any way relevant to his ability to sustain full-time work as of the time of the SSA hearing. Plaintiff's entire argument is that he was previously capable of full-time work, but can now no longer sustain that level of work. (Dkt. 19). The ALJ's reason, while technically true insofar as the Plaintiff was self-employed from 2007 to 2012, is irrelevant to his work capabilities at present and thus is not supported by the evidence.

Second, the Court acknowledges that the ALJ's second reason related to malingering is technically true as well, insofar as Gregory had completed two prior consultative exams where malingering is mentioned. In a previous consultative exam from August 4, 2010, various tests were discontinued due to poor effort on Gregory's part, Gregory was described as oppositional and uncooperative from the outset, and

the state agency examiner assigned a diagnosis of malingering. (Dkt. 17-7 at 171-74, R. 790-93). At the second consultative exam on August 21, 2014, Gregory was described as aggravated, angry, and uncooperative, various tests were discontinued or not attempted due to poor effort on Gregory's part, and the psychologist suspected that Gregory was malingering. (Dkt. 17-7 at 191-94, R. 810-13).

Where the ALJ errs here, however, is by assuming that because Gregory had previously been suspected of malingering that he was malingering in his examination with Dr. Kittrell. In contrast to the prior two exams, Dr. Kittrell noted that Gregory put forth adequate effort and this clinical presentation was consistent with the diagnoses assigned. (Dkt. 17-7 at 219-223, R. 838-842). Dr. Kittrell never once mentioned malingering in his report. Moreover, where the previous consultants assigned no mental health diagnoses and instead referred to Gregory's malingering, Dr. Kittrell affirmed Gregory's diagnoses of persistent depressive disorder, anxiety disorder, personality disorder, PTSD with dissociative features, and a neurocognitive disorder. (Dkt. 17-7 at 222, R. 841). If Dr. Kittrell had suspected Gregory of malingering during his August 2015 examination, the ALJ's suspicion would stand on firmer ground. As it remains, however, Dr. Kittrell did not suspect malingering and, as the agency's own doctor, is unlikely to exaggerate an applicant's disability. *Garcia*, 741 F.3d at 761.

Both of the ALJ's reasons for discounting Dr. Kittrell's consultative opinion are thus not supported by substantial evidence. This error cannot be deemed harmless, because Dr. Kittrell's findings related to Gregory's ability to follow through with work

17

tasks and maintain general productivity standards may potentially render Gregory disabled, pursuant to the vocational expert's testimony than an individual off task more than ten percent of the day would be precluded from all employment. (Dkt. 17-2 at 97, R. 96). As such, this issue requires remand.

### iii. Knee Limitations

Finally, Plaintiff argues that the ALJ erred by failing to include knee-related limitations in the RFC. (Dkt. 19 at 18). Plaintiff maintains that the medical records, including findings from consultative examinations, demonstrated reduced range of motion, ongoing pain due to prior gunshot wounds, and difficulty standing and walking, all of which should result in at least some knee-related limitations in the RFC. (Id. at 19-20). Moreover, Plaintiff contends that the ALJ improperly discounted the opinion of the state agency consultative examiner, Dr. Jerry Bush, who found greater physical limitations than those found by the ALJ. (Id.). The Commissioner argues that the ALJ properly explained her decision to discount Dr. Bush's medical opinion and not to include any knee-related limitations in the RFC. (Dkt. 23 at 8-9).

On July 16, 2015, Dr. Jerry Bush conducted a consultative exam at the request of the SSA. (Dkt. 17-7 at 197, R. 815). Dr. Bush noted that Gregory had limited range of motion in both knees. (Id.). Dr. Bush assigned diagnoses, in relevant part, of status post gunshot wounds to the head and knee, disequilibrium, vision difficulties, chronic bilateral knee pain, and chronic lumbar spine pain. (Id.). Due to these diagnoses, Dr. Bush concluded that Gregory has a moderate to severe impairment, and should have limitations with respect to driving; being in too close proximity to open moving

18

machinery or unprotected heights; prolonged lying in recumbent position; and prolonged or repetitive heavy lifting, standing, walking, squatting, crouching, bending, climbing, stooping, or kneeling. (Id.).

In her opinion, the ALJ concluded that Gregory's leg injuries as a result of past gunshot wounds constituted a nonsevere impairment. (Dkt. 17-2 at 22, R. 21). When discussing Dr. Bush's findings, the ALJ only discusses the findings related to Gregory's back, but fails to discuss Gregory's knees. When proceeding to the RFC, the ALJ gave great weight to the state agency reviewing consultants and only some weight to Dr. Bush as the state agency examining consultant. (Dkt. 17-2 at 29, R. 28). The ALJ discounted Dr. Bush's opinion related to postural and non-exertional limitations because of Gregory's limited treatment for his back condition. (Id.).

As noted previously, ALJs are not required to credit the agency's examining physician, but rejecting the examining physician while crediting the reviewing physician is an unusual step and requires a good explanation from the ALJ. *Beardsley*, 758 F.3d at 839; *Jones v. Saul*, 823 F. App'x at 439. In this case, the ALJ discredited a portion of Dr. Bush's consultative opinion because of Gregory's lack of treatment for his back condition. (Dkt. 17-2 at 29, R. 28). As Gregory points out, however, his back condition was not the only diagnosis made by Dr. Bush. (Dkt. 19 at 20-21). Dr. Bush concluded that Gregory's chronic bilateral knee pain and status post gunshot wounds to the knee also contributed to Gregory's need for postural and non-exertional limitations. (Dkt. 17-7 at 199, R. 818). The ALJ, however, is silent on Gregory's knee condition, apart from a brief mention of the knee when determining

19

whether the condition was severe at Step Two; in the RFC section and when weighing Dr. Bush's opinion, the ALJ does not mention Gregory's knee condition. While Gregory's back pain alone may not have justified additional RFC limitations, his knee condition alone or his knee condition in conjunction with his back pain may have warranted additional restrictions. Without any such discussion, the Court is left to guess the appropriate result. This issue also requires remand.

## V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

So ORDERED.

Date: 2/11/2022

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.